STODDARD *v.* COOPER-WIDENMANN CONSTRUCTION CO.

MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — EMPLOYEE.

Where plaintiff, who with his team and wagon was hired at a certain price per day by one M., engaged in the teaming and trucking business, receiving his instructions every morning where to go, was sent by M. to haul material for defendant construction company with whom he had a contract at a certain price per hour for man, team and wagon, defendant furnishing a helper to help load and unload and directing where the material should go, but having no power to. discharge plaintiff, and, if dissatisfied, could only complain to M., plaintiff was not an employee of defendant within the meaning of the workmen's compensation act rendering it liable for an injury to him while unloading his wagon.

Certiorari to Department of Labor and Industry. Submitted October 19, 1922. (Docket No. 136.) Decided December 5, 1922.

Lucius E. Stoddard presented his claim for compensation against the Cooper-Widenmann Construction Company for an accidental injury in defendant's employ. From an order awarding compensation, defendant and the General Accident, Fire & Life Assurance Corporation, Limited, insurer, bring certiorari. Reversed and order vacated.

*Kerr & Lacy,* for appellants.

*Lehman & Lisle,* for appellee.

SHARPE, J. In May, 1921, defendant entered into a contract with one John Moore to haul the material

---

As to who are employees within the meaning of workmen's compensation acts, specifically as to contractors and their employees, see notes in L. R. A. 1916A, 115, 246; L. R. A. 1917D, 148; L. R. A. 1918F, 201.

to be used in erecting a stadium for the University of Michigan at Ann Arbor from the railroad depots. The price agreed upon was $1.25 per hour for a man, team and wagon. Moore had for several years been engaging in the teaming and trucking business. He owned several teams and wagons and employed drivers therefor. He also hired men with teams and wagons, paying them $10 per day. The plaintiff, Stoddard, had been so employed by Moore for a considerable time prior to May 9, 1921. He reported to Moore each morning and received instructions where to go and what to do. He was transferred from one job to another as circumstances required. On May 9th, plaintiff with his team and wagon was engaged in hauling lumber and cement for the defendant. The defendant furnished a man to assist in loading and unloading. While plaintiff was unloading a heavy timber, the helper dropped his end of the stick. This caused plaintiff to lose hold of his end and it fell, striking plaintiff's foot, causing an abrasion which later became infected, resulting in disability.

Plaintiff presented a claim for compensation under the workmen's compensation act. Defendant here reviews the order of the department of labor and industry affirming the award made on arbitration. But one question is presented, Was Stoddard an employee of the defendant within the meaning of the law in force at the time of his injury?

The board made the following finding:

"It appears from the proofs that when teams and drivers were furnished to the construction company by Mr. Moore, the construction company gave directions as to what was to be done, where the lumber or cement was to be placed and had complete control of this work. There is nothing in the record to indicate that Moore had any control over the work which was done for the construction company other than to furnish the teams and drivers. It appears from the

proofs, that when the superintendent was not satisfied with a team or driver furnished, he made complaint to Moore; and that on some occasions Moore sent another man and team and on other occasions he sent the same man and team back the following day.

"The fact that the construction company had the right to make complaint to Moore if the men and teams furnished were not agreeable to it does not, in this case, show that Moore had control of the men while on the work of the construction company. It simply indicates that the construction company had a right not to accept the services of a team or driver furnished by Moore, if said team or driver were unsatisfactory.

"There is nothing to indicate that Moore ever did in any way exercise control over the men and teams after they had been furnished by him to the construction company, or that he had any such right.

"In our opinion this case falls squarely within the holding of our Supreme Court in the cases of *Jamik* v. *Ford Motor Co.,* 180 Mich. 557 (52 L. R. A. [N. S.] 294, Ann. Cas. 1916A, 669) ; *Arnett* v. *Hayes Wheel Co.,* 201 Mich. 67; and the cases therein cited.

"In our opinion the respondent, Cooper-Widenmann Construction Company, had the right of control of the applicant and was therefore his employer."

Counsel for plaintiff urge that the finding that the defendant "had the right of control of the applicant and was therefore his employer" is controlling; that it is supported by proof and, in the absence of fraud, should not be disturbed.

One of the tests of the relationship, and in many cases the controlling one, is the right to control. There is no dispute in the testimony. Plaintiff was employed by Moore. Defendant's foreman directed him where to go for material and sent a helper to assist him in loading and unloading. If not satisfied with his work, he would have asked Moore not to send him again. He had no authority to discharge him. The control exercised by Moore was to direct the several men with teams to go to the several

places where he had secured work for them and perform such team work as was there required of them. Had plaintiff been temporarily incapacitated, Moore, and not the defendant, would have supplied a man to take his place.      Moore might have recalled him from the work he was doing at any time.

The facts are on all fours with those in *Golden & Boter Transfer Co.* v. *Brown & Sehler Co.*, 209 Mich. 503.      In that case, Hoertz & Son, general contractors, were engaged in removing the debris of a building consumed by fire.      At their request, Golden & Boter, who were engaged in general teaming, sent teams and teamsters to assist in the work.      A teamster, Mellema, was killed by the falling of a wall.      The trial court was asked to direct the jury that Mellema was in the employ of Hoertz & Son.      This court said:

"We think this contention is disposed of by the undisputed testimony that Golden & Boter hired him and paid him and put him in charge of one of their teams, harness, and wagon, and while they in turn sent him and his outfit to do the work for Brown & Sehler, through an arrangement with Hoertz & Son to work by the day, he was all the while in the employ of Golden & Boter."

In the *Arnett Case* it appeared "that the employee was actually under the control of another person during the progress of the work."      In the *Janik Case* the fact was stressed that "the motor company had no control over nor interest in the car after it left its salesrooms, nor in the manner in which it was run, nor in where it went."

In the instant case, Mr. Moore furnished the plaintiff and his team and wagon, whom he was paying by the day to do a specific work for the defendant by the hour.      The work plaintiff was to do was to drive his team attached to the wagon and convey such load as was put upon it where directed to do so.      The loading and unloading were incidental thereto.      No con-

trol was exercised or could have been exercised over the manner in which plaintiff should drive his team. He alone, acting under the instructions of his employer, Mr. Moore, directed its movements. The defendant had no authority to discharge plaintiff. If dissatisfied with the manner in which he performed his work, he could but complain to Mr. Moore and ask that another man be sent to do the work for which he was engaged. At any time Mr. Moore might have replaced plaintiff by putting another man and team at the work for defendant and sending plaintiff to do some other work of hauling.

A review of the authorities will be found in *Carleton v. Machine Products Co.*, 199 Mich. 148. We feel constrained to hold that plaintiff was not an employee of defendant within the meaning of the language of the law in force at the time of his injury.

The order of the board is vacated and set aside.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, BIRD, and STEERE, JJ., concurred. MOORE, J., did not sit.